[Civ. No. 1834. Fourth Appellate District.—February 23, 1937.]

In the Matter of the Estate of H. S. BRUCE, Deceased.
LEWIS BRUCE, Appellant, v. ORPHA E. OWEN
et al., Respondents.

John Preston King for Appellant.

Clarence H. Wilson for Respondents.

·BARNARD, P. J.—This is an appeal from an order settling an account of the executors of this estate.

H. S. Bruce died on November 5, 1930. His son Lewis Bruce and one Chester Dowell were appointed executors of his will on December 8, 1930. The inventory and appraisement, filed on March 7, 1931, in setting forth the property belonging to the estate which had come into the hands of the executors, listed 125 shares of stock in a certain bank appraised at $14,000, a note executed by Lewis Bruce appraised at $2,640, and a note executed by Orpha E. Owen appraised at $119.05, a total of $16,759.05.

On December 17, 1935, the executors filed their first account, in which they included the proceeds of twenty-five shares of this bank stock which had been sold, together with the dividends received from these particular shares, but omitted all reference to the other one hundred shares of bank stock or the dividends thereon. On December 20, 1935, two daughters of the deceased filed a contest to this account, demanding, among other things, that the executors be charged with the other hundred shares of bank stock and the dividends thereon. Thereupon the executors filed a supplemental account, sworn to by Lewis Bruce, alleging that this one hundred shares of bank stock was not and never had been the property of said estate, but was and at all times had been the property of Lewis Bruce, and that the same had been included as an asset of the estate "by reason of inadvertence and mistake". After a hearing upon the account and the exceptions thereto the court made its order settling the account, finding, among other things, that Lewis Bruce held title to one hundred shares of this bank stock in trust for the said H. S. Bruce, and charging the executors with said stock, including all dividends thereon. This appeal was taken by Lewis Bruce from that portion of this order which charged the executors with this one hundred shares of bank stock and dividends therefrom.

 The appellant contends that the trial court, sitting as a probate court, had no jurisdiction to pass upon the question of ownership or title to this stock. He relies upon the general rule that a probate court, in settling an account, has no jurisdiction to determine the rights of parties claiming adversely to the estate. (*Texas Co.* v. *Bank of America etc., Assn.,* 5 Cal. (2d) 35 [53 Pac. (2d) 127].) This case falls within a well-recognized exception to the rule referred to. (*Estate of Roach,* 208 Cal. 394 [281 Pac. 607], and cases there cited.)

■ The main question presented is whether the order and the findings to the effect that the bank stock in question was held by Lewis Bruce in trust for H. S. Bruce and is a part of his estate are supported by the evidence. It appears without dispute that the appellant purchased one hundred shares of the bank stock in 1909 and that at or near the same time the deceased purchased the other twenty-five shares. The one hundred shares of stock was issued in the name of the appellant. The appellant testified that he used his own funds to purchase this stock, and that at all times he had dealt with the same as his own property and had asserted an absolute ownership therein. Chester Dowell testified that he sold one hundred shares of the stock to the appellant and twenty-five shares to the deceased, that the appellant paid the consideration for the one hundred shares, that both the appellant and the deceased were present at the time the stock was sold, and that nothing was then said by the deceased about his owning any interest in the one hundred shares or that any of his funds had been used in purchasing the same. Because this evidence was not directly disputed the appellant contends that it was and is conclusive and that there is, therefore, no evidence to support the findings and conclusions of the court.

The will of the deceased read in part as follows:

"My estate consists of a note signed by my son, Lewis Bruce, for $2000.00, one hundred twenty five (125) shares of stock in the Los Angeles-First National Trust and Savings Bank, 100 shares of which are held in the name of Lewis Bruce."

The petition for probate, sworn to by the appellant, listed as one asset of the estate one hundred and twenty-five shares of this bank stock, and alleged that it was of the value of $11,500, or thereabouts. Following his testimony at the hearing of the petition for probate of the will on December 8, 1930, the appellant signed a "Testimony of witness on probate of holographic will" in which it was stated that the deceased left personal property, the value and character of which was correctly set forth in the petition for probate of the will and that this property was of the value of $14,000 or thereabouts. At the hearing which resulted in this appeal the appellant, when asked whether the statements contained in the document just referred to were true at the time they were made, replied: "Well, to a certain extent, yes. That is,

if I could have carried out the intentions that I had at the time, of giving the estate one hundred shares of stock to probate, such a hearing as we are having today, it would have been a fact, and at that time I expected to do that.'' The inventory and appraisement was sworn to by the appellant and listed the one hundred and twenty-five shares of this bank stock as a part of the property of the estate.

On January 1, 1931, the appellant wrote a letter to his sister, one of the contestants, enclosing a copy of the will and saying in part:

''You will see by the copy of the will that there is bank stock to be divided between you, Orpha and I. What would you prefer: That the stock be divided and you keep your share of it, or would you rather it be sold and send you the cash? It is worth $88.00 per share now, has been down to $76.00, and, of course, I cannot tell how much it will be worth at the time the estate is ready to be divided.''

On December 7, 1933, the appellant wrote to the same sister, mentioning the price at which the ''bank stocks'' were then selling and saying that $83 was still due on the cemetery lots and that he had promised to pay half of this from the dividends to be received the next July and the balance from the dividends the next January. It may be observed that the dividends then being paid on this bank stock would amount to but $16.25 on twenty-five shares, which would be much less than the amount required to pay half of the $83 while the dividends on all of the bank stock would be ample for that purpose.

Chester Dowell testified that while he signed most of the papers in the estate he left the management of the estate entirely to the appellant, that he knew the provisions of the will, and that when he signed the petition for probate and the inventory and appraisement he knew that these documents listed the one hundred and twenty-five shares of bank stock as property of the estate. He also testified that at one time when the deceased was involved in divorce proceedings with a former wife ''he did tell me that she would never get any of his money and that he was going to dispose of it in a manner some way that she never could get it. He told me that. And I had reasons to believe, just by, you might say guess work, that he had turned it over, whatever it was, to Dr. Bruce, but I never knew it and had nothing to prove

it anyway.'' He further testified that he knew there was an argument in the family at different times before the death of H. S. Bruce as to whom this stock belonged, but that he had no definite knowledge concerning it.

The appellant testified that about 1909, at a time when his father's wife had sued him for divorce, his father handed him cash and securities of the value of $11,000 and that ''When I asked him what he wanted me to do with it he said he didn't care what I did with it, that that old woman wasn't going to get any of it, . . . '' He further testified that by 1910 he had given $6,000 of this amount back to his father, and that from about 1919 until the death of his father he had regularly given his father amounts equaling half of the dividends received on the bank stock. He also testified that he thought he had told all of the heirs of the estate that only twenty-five shares of the stock belonged to his father and ''that if the estate was allowed to go along until I could, that I would give the estate one hundred shares of stock and would settle it up just as the will says'', but that he lost money between 1931 and 1934 and came to the conclusion that he was unable to give the estate anything. He testified that at the time the estate was started he agreed to pay an attorney $400 for his services in probating the estate and that this attorney told him that this was less than the legal fee would be. This is significant since this fee is considerably larger than the fee provided by law if the one hundred shares of stock were not a part of the estate.

A sister of the appellant testified that her father had told her several times that the appellant had bank stock which belonged to the father, that she and the appellant were both present when the will was admitted to probate at which time the will was read aloud in the presence of the appellant, that shortly after the will was admitted to probate the appellant told her ''if any of the heirs get cocky and want to settle the estate before I am ready to settle, I will claim the one hundred shares of stock'', and that the first time she heard the appellant say that this one hundred shares of stock belonged to him and not to the estate was in the latter part of 1933.

The appellant argues that the evidence conclusively shows that certain property was given to him by his father in 1909 and that a constructive trust could not arise, with respect to

the one hundred shares of stock, since there is no evidence that he purchased the same with funds belonging to his father. While the appellant relies upon portions of his own testimony and upon a portion of that given by the other executor, a substantial conflict is raised by the other evidence referred to which, with the reasonable inferences therefrom, is sufficient to support the findings and order.

In his reply brief the appellant for the first time raises a question as to the admissibility of certain testimony. Not only was this question raised too late, but the evidence in question is merely cumulative and may be disregarded without changing the result.

The order appealed from is affirmed.

Marks, J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 25, 1937.